**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> **v.** <br> **PATRICK CLYNE,** <br> **Defendants.** | **CRIMINAL NO.: 07-CR-00107-ML** |

**REPLY TO GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO CONTINUE SENTENCING**

Defendant Patrick Clyne respectfully replies, by and through undersigned counsel, to the government's objection to defendant's motion to continue his sentencing, currently scheduled for November 2, 2007.

With respect to the government's claim that Mr. Clyne is a risk to leave the United States, defendant submits that the government's claim is without merit. As this Honorable Court likely recalls, Mr. Clyne voluntarily returned to the United States from Ireland to face the charges set forth in the Information with full knowledge that, if convicted, he would likely receive a sentence of imprisonment. Since returning to the United States, Mr. Clyne has been on pretrial and post-plea release and has complied with each and every condition imposed on him by the Court, including electronic monitoring.

Moreover, the government's second flight argument that highlights the total loss to RISD and couples this loss with the phrase "[S]ome of those funds were sent to Ireland, and were used to purchase land" is misleading. Specifically, it attempts to mislead the Court to the conclusion that monies were sent to Ireland and used to purchase land when the government has no evidence to

support this conclusion and has identified only one parcel of land in Ireland that the government knows was purchased for $60,000.00. Indeed, according to documents the *government produced* to undersigned counsel, and contrary to the government's allegation that the "funds were sent to Ireland", the funds at issue never left the United States (emphasis added). Rather, according to the documents produced by the government, Mr. Clyne wrote personal checks to the seller, Bridie O'Hara, drawn on his Sovereign Bank account in the United States and sent these checks to Ms. O'Hara, who was living in Massapequa Park, New York, whereupon Ms. O'Hara deposited these checks into bank accounts which apparently were located in the State of New York. Thus, contrary to the government's allegations, the funds to purchase the property in Ireland never left the United States. As a result, the government's risk of flight arguments have no merit.

In addition, the government's assertion that it is "difficult to image (*sic*) that the defendant does not have in his possession copies of any documents relating to the ownership of properties in Ireland" is particularly offensive to undersigned counsel, who has repeatedly indicated to counsel for the government that said documents are in the possession of a solicitor in Ireland who has not yet sent them to undersigned counsel despite numerous written requests to do so. Notwithstanding the government's difficulty with its imagination, the fact is that undersigned counsel does not have in his possession the documents requested by the government and has been attempting to get them for some time. That is the truth whether the government wants to believe it or not. And, it is particularly offensive to undersigned counsel to imply to this Honorable Court, without any proof or justification, that undersigned counsel and, for that matter, defendant is holding back these documents.

More importantly, defendant cannot adequately respond to the government's allegations and request for a 2-level adjustment for obstruction of justice without these documents. The government

is well aware of this fact and, apparently, has concluded that these documents which, upon information and belief, will demonstrate that Mr. Clyne has been truthful in his financial disclosures are unnecessary for this Court's determination. In addition, as the Court well knows, when it comes to real estate, record title and ownership in fact, are not necessarily the same. All defendant asks for is some additional time to marshal the evidence he needs to defend himself against the government's recent obstruction claim and submits that this is not an unreasonable request.

With respect to the government's request that defendant produce the correspondence that undersigned counsel has received from the solicitor in Ireland, undersigned counsel rejected this request for the obvious reason that it would infringe upon the attorney-client privilege. Moreover, when the government requested to speak to the solicitor in Ireland directly, the government indicated that its purpose was, in essence, to ask the solicitor for his legal advice regarding actual ownership of the property. Believing that it would be a conflict for the government to receive legal advice from the same individual providing legal advice to defendant, undersigned counsel informed the government that direct communications would not be appropriate under the circumstances. In addition, counsel for the government was further informed that the solicitor did not feel comfortable speaking to him directly about issues that could affect Mr. Clyne's criminal liability in the United States. Thus, to the extent that the government implies that rejecting its requests to see the solicitor's correspondence and to speak to the solicitor directly was somehow improper, the government argument is misguided.

Finally, while it is true that a defendant's medical condition is a discouraged sentencing factor, it is also true that post-*Booker*, this Honorable Court has more discretion concerning not only the length of defendant's sentence, but where he might serve his sentence. Indeed, the Bureau of Prisons' new CARE Level Classification System relies heavily on the medical information in the

Presentence report and other sentencing documents when classifying and designating inmates. Thus, a full and complete medical picture of defendant is not only essential, but in the interests of justice, especially when sentencing a 65-year old defendant with coronary artery disease and insulin dependent diabetes that requires frequent blood sugar checks, regular meals, and timely doses of long acting and rapid acting insulin.

Thus, for the reasons set forth herein, as well as the reasons previously argued, defendant submits that good cause exists for continuing his sentencing to November 30, 2007.

Respectfully submitted,

/s/ Scott P. Lopez
Scott P. Lopez, Mass. BBO # 549556
*Pro Hac Vice Counsel*
Law Office of Scott P. Lopez
24 School Street, 8th Floor
Boston, MA 02108
(617) 742-5700 (tel)
(617) 742-5715 (fax)
lopez@lopezlaw.com

/s/ Kevin J. Bristow
Kevin J. Bristow, RI Bar ID # 3984
*Local Counsel*
505 Turks Head Building
Providence, RI 02903
(401) 521-2800 (tel)
(401) 521-2812 (fax)
KJBristowlaw@verizon.net

Dated: October 24, 2007

CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2007, a copy of the foregoing Motion was filed electronically and served by mail on any attorney of record that is unable to accept electronic filing in this. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by first class mail to any attorney of record unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Scott P. Lopez
Scott P. Lopez