**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA,**

**v.**

**PATRICK CLYNE,**
**Defendant.**

**CRIMINAL NO.: 07-CR-00107-ML**

**DEFENDANT PATRICK CLYNE'S**
**MOTION TO CORRECT HIS SENTENCE**

Defendant Patrick Clyne, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure to correct his sentence. In support of this motion, Mr. Clyne submits his Memorandum of Law filed simultaneously herewith.

Respectfully submitted,

/s/ Scott P. Lopez
Scott P. Lopez
Mass. BBO # 549556
*Pro Hac Vice Counsel*
Law Office of Scott P. Lopez
24 School Street, 8th Floor
Boston, MA 02108
(617) 742-5700 (tel)
(617) 742-5715 (fax)
lopez@lopezlaw.com

/s/ Kevin J. Bristow
Kevin J. Bristow
RI Bar ID # 3984
*Local Counsel*
505 Turks Head Building
Providence, RI 02903
(401) 521-2800 (tel)
(401) 521-2812 (fax)
KJBristowlaw@verizon.net

Dated: December 11, 2007

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2007, a copy of the foregoing Motion was filed electronically and served by mail on any attorney of record that is unable to accept electronic filing in this. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by first class mail to any attorney of record unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Scott P. Lopez
Scott P. Lopez

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**PATRICK CLYNE,**<br>**Defendant.** | **CRIMINAL NO.: 07-CR-00107-ML** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PATRICK CLYNE'S**
**MOTION TO CORRECT HIS SENTENCE**

Defendant Patrick Clyne, by and through undersigned counsel, submits this Memorandum of Law in support of defendant's Motion to Correct his Sentence. Specifically, yesterday, the Supreme Court of the Unites States of America held that a deferential abuse-of-discretion standard of review applies to appellate review of all sentencing decisions – whether inside or outside the Guidelines range. See Gall v. United States, 552 U.S. ____ (2007) attached hereto for the Court's convenience. In Gall, the Supreme Court held that, while the extent of the difference between a particular sentence and the recommended Guideline range is surely relevant, courts of appeals must review all sentences – whether inside, just outside, or significantly outside the Guideline range – under a deferential abuse-of-discretion standard. The Supreme Court further held the District Judge's sentence of probation was reasonable even though the recommended Guideline range was 30-37 months of imprisonment. In so holding, the Supreme Court specifically rejected the Eighth Circuit's *de novo* analysis of the district court's sentence by noting the following:

> The Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the §3553(a) factors justified a sentence of probation; it believed that the circumstances presented here were insufficient to sustain such a marked deviation from the Guidelines range. But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence

> reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the §3553(a) factors, on the whole, justified the sentence. Accordingly, the judgment of the Court of Appeals is reversed. Slip Opinion at 21.

In Gall, the Eighth Court of Appeals, relying on its earlier opinion in United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), held that a sentence outside of the Guideline range must be supported by a justification that "is proportional to the extent of the difference between the advisory range and the sentence imposed." Id. at 6 (citations omitted). Characterizing the difference between a sentence of probation and the bottom of Gall's advisory Guideline range of 30 months as "extraordinary" because it amounted to "a 100% downward variance", the Court of Appeals held that such a variance must be supported by extraordinary circumstances. Id. The Court of Appeals thereafter justified its reversal of the District Judge by identifying five errors in the lower court's reasoning. The Supreme Court was not persuaded that the factors raised by the Court of Appeals, either individually or in the aggregate, were sufficient to support the conclusion that the District Judge abused his discretion. In so doing, the Supreme Court made clear that a rule requiring "proportional" justifications for departures or variances from the Guidelines range is not consistent with the remedial opinion in United States v. Booker, 543 U.S. 220 (2005).

In Gall, the Supreme Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guideline range. The Court also rejected the use of a rigid "mathematical formula" that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. Indeed, the Court made clear that its reason for rejecting these approaches is because they come "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." Id. at 8.

The Court also noted that "quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation." Id. at 9. Most importantly, the Court noted that the "exceptional circumstances requirement" and the "rigid mathematical formulation" reflect "a practice – common among courts that have adopted 'proportional review' of applying a heightened standard of review to sentences outside the Guideline range" which is inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decision. Id. at 10-11.

Thus, in Gall, the Supreme Court made clear that if a sentence is outside the Guideline range, a Court of Appeals cannot apply a presumption of unreasonableness. Moreover, while the Court of Appeals can consider the extent of the deviation, it must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance. Finally, the fact that an appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

During defendant's sentencing in this case, it is clear that this Honorable Court was cognizant of the First Circuit's recent penchant for reversing sentences in which District Judges imposed sentences substantially below the recommended Guideline Range. See United States v. Tom, 504 F.3d 89 (1st Cir. 2007)(sentence of 36 months probation and six months of community confinement reversed where recommended Guideline range was 37 months of imprisonment); United States v. Taylor, 499 F.3d 94 (1st Cir. 2007)(sentence of one year in a halfway house and 5 years probation reversed where recommended Guideline range was 30-37 months in prison); United States v. D'Amico, 496 F.3d 95 (1st Cir. 2007)(sentence of 4 months' imprisonment reversed where it was an 88% variance from the bottom of the recommended Guideline range of 31-41 months of

imprisonment); United States v. Thurston, 456 F.3d 211, 219 (1st Cir. 2006)(3-month sentence of imprisonment reversed where it was a 95% variance below the recommended guideline range and where the First Circuit further held that the district court "must impose a sentence of no less than 36-months' imprisonment to be considered reasonable where the recommended Guideline range was 60 months' imprisonment).

However, the Supreme Court's decision in Gall now makes clear that this type of *de novo* review, while playing lip service to an abuse of discretion standard of review, falls far short of the requisite deference Courts of Appeal must have for a District Judge's sentencing decision. Accordingly, to the extent that prior First Circuit precedent restricted this Honorable Court's discretion to grant a variance in this case and to the extent that the Gall decision clarifies the breadth of the Court's discretion to grant a variance, Mr. Clyne respectfully requests this Honorable Court to correct his sentence pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure. See United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989)(district court has the authority to modify a sentence to correct an acknowledged mistake).

Respectfully submitted,

/s/ Scott P. Lopez

Scott P. Lopez
Mass. BBO # 549556
*Pro Hac Vice Counsel*
Law Office of Scott P. Lopez
24 School Street, 8th Floor
Boston, MA 02108
(617) 742-5700 (tel)
(617) 742-5715 (fax)
lopez@lopezlaw.com

/s/ Kevin J. Bristow
Kevin J. Bristow
RI Bar ID # 3984
*Local Counsel*
505 Turks Head Building
Providence, RI 02903
(401) 521-2800 (tel)
(401) 521-2812 (fax)
KJBristowlaw@verizon.net

Dated: December 11, 2007

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2007, a copy of the foregoing Motion was filed electronically and served by mail on any attorney of record that is unable to accept electronic filing in this. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by first class mail to any attorney of record unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Scott P. Lopez
Scott P. Lopez

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GALL *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 06–7949. Argued October 2, 2007—Decided December 10, 2007

Petitioner Gall joined an ongoing enterprise distributing the controlled substance "ecstasy" while in college, but withdrew from the conspiracy after seven months, has sold no illegal drugs since, and has used no illegal drugs and worked steadily since graduation. Three and half years after withdrawing from the conspiracy, Gall pleaded guilty to his participation. A presentence report recommended a sentence of 30 to 37 months in prison, but the District Court sentenced Gall to 36 months' probation, finding that probation reflected the seriousness of his offense and that imprisonment was unnecessary because his voluntary withdrawal from the conspiracy and postoffense conduct showed that he would not return to criminal behavior and was not a danger to society. The Eighth Circuit reversed on the ground that a sentence outside the Federal Sentencing Guidelines range must be—and was not in this case—supported by extraordinary circumstances.

*Held:*

1. While the extent of the difference between a particular sentence and the recommended Guidelines range is relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard. Pp. 7–14.

(a) Because the Guidelines are now advisory, appellate review of sentencing decisions is limited to determining whether they are "reasonable," *United States* v. *Booker*, 543 U. S. 220, and an abuse-of-discretion standard applies to appellate review of sentencing decisions. A district judge must consider the extent of any departure from the Guidelines and must explain the appropriateness of an unusually lenient or harsh sentence with sufficient justifications. An appellate court may take the degree of variance into account and con-

sider the extent of a deviation from the Guidelines, but it may not require "extraordinary" circumstances or employ a rigid mathematical formula using a departure's percentage as the standard for determining the strength of the justification required for a specific sentence. Such approaches come too close to creating an impermissible unreasonableness presumption for sentences outside the Guidelines range. The mathematical approach also suffers from infirmities of application. And both approaches reflect a practice of applying a heightened standard of review to sentences outside the Guidelines range, which is inconsistent with the rule that the abuse-of-discretion standard applies to appellate review of all sentencing decisions—whether inside or outside that range. Pp. 7–10.

(b) A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration. After permitting both parties to argue for a particular sentence, the judge should consider all of 18 U. S. C. §3353(a)'s factors to determine whether they support either party's proposal. He may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. He must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the §3553(a) factors justify the variance. That the appellate court might have reasonably reached a different conclusion does not justify reversal. Pp. 11–14.

2. On abuse-of-discretion review, the Eighth Circuit failed to give due deference to the District Court's reasoned and reasonable sentencing decision. Since the District Court committed no procedural error, the only question for the Circuit was whether the sentence was reasonable, *i.e.,* whether the District Judge abused his discretion in determining that the §3553(a) factors supported the sentence and justified a substantial deviation from the Guidelines range. The Circuit gave virtually no deference to the District Court's decision that the variance was justified. The Circuit clearly disagreed with the District Court's decision, but it was not for the Circuit to decide *de novo* whether the justification for a variance is sufficient or the sen-

tence reasonable. Pp. 14–21.

446 F. 3d 884, reversed.

STEVENS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., and SOUTER, J., filed concurring opinions. THOMAS, J., and ALITO, J., filed dissenting opinions.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–7949

## BRIAN MICHAEL GALL, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2007]

JUSTICE STEVENS delivered the opinion of the Court.

In two cases argued on the same day last Term we considered the standard that courts of appeals should apply when reviewing the reasonableness of sentences imposed by district judges. The first, *Rita* v. *United States*, 551 U. S. ___ (2007), involved a sentence *within* the range recommended by the Federal Sentencing Guidelines; we held that when a district judge's discretionary decision in a particular case accords with the sentence the United States Sentencing Commission deems appropriate "in the mine run of cases," the court of appeals may presume that the sentence is reasonable. *Id.,* at ___ (slip op., at 11).

The second case, *Claiborne* v. *United States,* involved a sentence *below* the range recommended by the Guidelines, and raised the converse question whether a court of appeals may apply a "proportionality test," and require that a sentence that constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances. See *Claiborne* v. *United States*, 549 U. S. ___ (2006). We did not have the opportunity to answer this question

because the case was mooted by Claiborne's untimely death. *Claiborne* v. *United States*, 551 U. S. ___ (2007) *(per curiam)*. We granted certiorari in the case before us today in order to reach that question, left unanswered last Term. 551 U. S. ___ (2007). We now hold that, while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard. We also hold that the sentence imposed by the experienced District Judge in this case was reasonable.

# I

In February or March 2000, petitioner Brian Gall, a second-year college student at the University of Iowa, was invited by Luke Rinderknecht to join an ongoing enterprise distributing a controlled substance popularly known as "ecstasy."[1] Gall—who was then a user of ecstasy, cocaine, and marijuana—accepted the invitation. During the ensuing seven months, Gall delivered ecstasy pills, which he received from Rinderknecht, to other conspirators, who then sold them to consumers. He netted over $30,000.

A month or two after joining the conspiracy, Gall stopped using ecstasy. A few months after that, in September 2000, he advised Rinderknecht and other co-conspirators that he was withdrawing from the conspiracy. He has not sold illegal drugs of any kind since. He has, in the words of the District Court, "self-rehabilitated." App. 75. He graduated from the University of Iowa in 2002, and moved first to Arizona, where he obtained a job in the construction industry, and later to Colorado, where

[1] Ecstasy is sometimes called "MDMA" because its scientific name is "methylenedioxymethamphetamine." App. 24, 118.

he earned $18 per hour as a master carpenter. He has not used any illegal drugs since graduating from college.

After Gall moved to Arizona, he was approached by federal law enforcement agents who questioned him about his involvement in the ecstasy distribution conspiracy. Gall admitted his limited participation in the distribution of ecstasy, and the agents took no further action at that time. On April 28, 2004—approximately a year and a half after this initial interview, and three and a half years after Gall withdrew from the conspiracy—an indictment was returned in the Southern District of Iowa charging him and seven other defendants with participating in a conspiracy to distribute ecstasy, cocaine, and marijuana, that began in or about May 1996 and continued through October 30, 2002. The Government has never questioned the truthfulness of any of Gall's earlier statements or contended that he played any role in, or had any knowledge of, other aspects of the conspiracy described in the indictment. When he received notice of the indictment, Gall moved back to Iowa and surrendered to the authorities. While free on his own recognizance, Gall started his own business in the construction industry, primarily engaged in subcontracting for the installation of windows and doors. In his first year, his profits were over $2,000 per month.

Gall entered into a plea agreement with the Government, stipulating that he was "responsible for, but did not necessarily distribute himself, at least 2,500 grams of [ecstasy], or the equivalent of at least 87.5 kilograms of marijuana." *Id.*, at 25. In the agreement, the Government acknowledged that by "on or about September of 2000," Gall had communicated his intent to stop distributing ecstasy to Rinderknecht and other members of the conspiracy. *Ibid.* The agreement further provided that recent changes in the Guidelines that enhanced the recommended punishment for distributing ecstasy were not

applicable to Gall because he had withdrawn from the conspiracy prior to the effective date of those changes.

In her presentence report, the probation officer concluded that Gall had no significant criminal history; that he was not an organizer, leader, or manager; and that his offense did not involve the use of any weapons. The report stated that Gall had truthfully provided the Government with all of the evidence he had concerning the alleged offenses, but that his evidence was not useful because he provided no new information to the agents. The report also described Gall's substantial use of drugs prior to his offense and the absence of any such use in recent years. The report recommended a sentencing range of 30 to 37 months of imprisonment.

The record of the sentencing hearing held on May 27, 2005, includes a "small flood" of letters from Gall's parents and other relatives, his fiance, neighbors, and representatives of firms doing business with him, uniformly praising his character and work ethic. The transcript includes the testimony of several witnesses and the District Judge's colloquy with the Assistant United States Attorney (AUSA) and with Gall. The AUSA did not contest any of the evidence concerning Gall's law-abiding life during the preceding five years, but urged that "the Guidelines are appropriate and should be followed," and requested that the court impose a prison sentence within the Guidelines range. *Id.*, at 93. He mentioned that two of Gall's co-conspirators had been sentenced to 30 and 35 months, respectively, but upon further questioning by the District Court, he acknowledged that neither of them had voluntarily withdrawn from the conspiracy.

The District Judge sentenced Gall to probation for a term of 36 months. In addition to making a lengthy statement on the record, the judge filed a detailed sentencing memorandum explaining his decision, and provided the following statement of reasons in his written judgment:

> "The Court determined that, considering all the factors under 18 U. S. C. 3553(a), the Defendant's explicit withdrawal from the conspiracy almost four years before the filing of the Indictment, the Defendant's post-offense conduct, especially obtaining a college degree and the start of his own successful business, the support of family and friends, lack of criminal history, and his age at the time of the offense conduct, all warrant the sentence imposed, which was sufficient, but not greater than necessary to serve the purposes of sentencing." *Id.*, at 117.

At the end of both the sentencing hearing and the sentencing memorandum, the District Judge reminded Gall that probation, rather than "an act of leniency," is a "substantial restriction of freedom." *Id.*, at 99, 125. In the memorandum, he emphasized:

> "[Gall] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term." *Id.*, at 125.

Finally, the District Judge explained why he had concluded that the sentence of probation reflected the seriousness of Gall's offense and that no term of imprisonment was necessary:

> "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct

> and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society. In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life." *Id*., at 125–126.

II

The Court of Appeals reversed and remanded for resentencing. Relying on its earlier opinion in *United States* v. *Claiborne,* 439 F. 3d 479 (CA8 2006), it held that a sentence outside of the Guidelines range must be supported by a justification that "'"is proportional to the extent of the difference between the advisory range and the sentence imposed."'" 446 F. 3d 884, 889 (CA8 2006) (quoting *Claiborne,* 439 F. 3d, at 481, in turn quoting *United States* v. *Johnson*, 427 F. 3d 423, 426–427 (CA7 2005)). Characterizing the difference between a sentence of probation and the bottom of Gall's advisory Guidelines range of 30 months as "extraordinary" because it amounted to "a 100% downward variance," 446 F. 3d, at 889, the Court of Appeals held that such a variance must be—and here was not—supported by extraordinary circumstances.

Rather than making an attempt to quantify the value of the justifications provided by the District Judge, the Court of Appeals identified what it regarded as five separate errors in the District Judge's reasoning: (1) He gave "too much weight to Gall's withdrawal from the conspiracy"; (2) given that Gall was 21 at the time of his offense, the District Judge erroneously gave "significant weight" to studies showing impetuous behavior by persons under the age of 18; (3) he did not "properly weigh" the seriousness of Gall's offense; (4) he failed to consider whether a sentence

of probation would result in "unwarranted" disparities; and (5) he placed "too much emphasis on Gall's post-offense rehabilitation." *Id.,* at 889–890. As we shall explain, we are not persuaded that these factors, whether viewed separately or in the aggregate, are sufficient to support the conclusion that the District Judge abused his discretion. As a preface to our discussion of these particulars, however, we shall explain why the Court of Appeals' rule requiring "proportional" justifications for departures from the Guidelines range is not consistent with our remedial opinion in *United States* v. *Booker*, 543 U. S. 220 (2005).

## III

In *Booker* we invalidated both the statutory provision, 18 U. S. C. §3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines mandatory, and §3742(e) (2000 ed. and Supp. IV), which directed appellate courts to apply a *de novo* standard of review to departures from the Guidelines. As a result of our decision, the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." Our explanation of "reasonableness" review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions. See 543 U. S., at 260–262; see also *Rita*, 551 U. S., at ___ (STEVENS, J., concurring).

It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sen-

tencing decisions.[2] *Id.*, at ___.

In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range. See *id.*, at ___ (slip op., at 15) ("The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness").[3] Even the Government has acknowl-

---

[2] Notably, not all of the Guidelines are tied to this empirical evidence. For example, the Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes. See United States Sentencing Commission, Guidelines Manual §1A1.1 (Nov. 2006) (USSG). This decision, and its effect on a district judge's authority to deviate from the Guidelines range in a particular drug case, is addressed in *Kimbrough* v. *United States*, *post*, p. ___.

[3] Several Courts of Appeals had rejected such a presumption of unreasonableness even prior to our decision in *Rita*. See, *e.g.*, *United States* v. *Howard*, 454 F. 3d 700, 703 (CA7 2006) ("Although a sentence outside the range does not enjoy the presumption of reasonableness that one within the range does, it does not warrant a presumption of unreasonableness"); *United States* v. *Matheny*, 450 F. 3d 633, 642 (CA6 2006) ("[T]his court's holding that sentences within the advisory guideline range are presumptively reasonable does not mean that sentences outside of that range are presumptively unreasonable"); *United States* v. *Myers*, 439 F. 3d 415, 417 (CA8 2006) ("We have determined that a sentence imposed within the guidelines range is presumptively reasonable. While it does not follow that a sentence outside the guidelines

edged that such a presumption would not be consistent with *Booker*. See Brief for United States in *Rita* v. *United States*, O. T. 2006, No. 06–5754, pp. 34–35.

The mathematical approach also suffers from infirmities of application. On one side of the equation, deviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years. Moreover, quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation. App. 95.

We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States* v. *Knights*, 534 U. S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin* v. *Wisconsin*, 483 U. S. 868, 874 (1987))).[4] Probationers may not

---

range is unreasonable, we review a district court's decision to depart from the appropriate guidelines range for abuse of discretion" (citation omitted)).

[4] See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13–14 (1957) ("Probation is not granted out of a spirit of leniency. . . . As the Wickersham Commission said, probation is not merely 'letting an offender off easily' "); 1 N. Cohen, The Law of Probation and Parole §7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society. . . . Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a

leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG §5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109.

On the other side of the equation, the mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? Does it matter that the withdrawal occurred several years ago? Is it relevant that the withdrawal was motivated by a decision to discontinue the use of drugs and to lead a better life? What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him? The formula is a classic example of attempting to measure an inventory of apples by counting oranges.[5]

Most importantly, both the exceptional circumstances requirement and the rigid mathematical formulation reflect a practice—common among courts that have adopted "proportional review"—of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse-

---

caseworker or psychotherapist").

[5] Notably, when the Court of Appeals explained its disagreement with the District Judge's decision in this case, it made no attempt to quantify the strength of any of the mitigating circumstances.

of-discretion standard of review applies to appellate review of all sentencing decisions—whether inside or outside the Guidelines range.

As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See 551 U. S., at ___. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.[6] In so doing, he may

---

[6] Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U. S. C. §3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:

"the need for the sentence imposed—

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

"(B) to afford adequate deterrence to criminal conduct;

"(C) to protect the public from further crimes of the defendant; and

"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." §3553(a)(2).

The third factor pertains to "the kinds of sentences available," §3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," §3553(a)(6); and the seventh to "the need to provide restitution to any victim," §3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. §3553(a) (2000 ed., Supp. V). The fact that §3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

not presume that the Guidelines range is reasonable. See *id.*, at ___. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id.*, at ___.

Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. *Id.*, at ___. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the §3553(a) factors, on a

whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Practical considerations also underlie this legal principle. "The sentencing judge is in a superior position to find facts and judge their import under §3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Brief for Federal Public and Community Defenders et al. as *Amici Curiae* 16. "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Rita,* 551 U. S., at ___ (slip op., at 18). Moreover, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do." *Koon* v. *United States*, 518 U. S. 81, 98 (1996).[7]

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate,

---

[7] District judges sentence, on average, 117 defendants every year. Administrative Office of United States Courts, 2006 Federal Court Management Statistics 167. The District Judge in this case, Judge Pratt, has sentenced over 990 offenders over the course of his career. *United States* v. *Likens*, 464 F. 3d 823, 827, n. 1 (CA8 2006) (Bright, J., dissenting). Only a relatively small fraction of these defendants appeal their sentence on reasonableness grounds. See *Koon*, 518 U. S., at 98 ("In 1994, for example, 93.9% of Guidelines cases were not appealed"); *Likens*, 464 F. 3d, at 827, n. 1 (Bright, J., dissenting) (noting that the District Judge had sentenced hundreds of defendants and that "[w]e have reviewed only a miniscule number of those cases"); cf. United States Sentencing Commission, 2006 Sourcebook of Federal Sentencing Statistics 135–152.

Case 1:07-cr-00107-ML-DLM Document 35 Filed 12/11/2007 Page 24 of 47



sometimes magnify, the crime and the punishment to ensue." *Id.,* at 113.[8] The uniqueness of the individual case, however, does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions. As we shall now explain, the opinion of the Court of Appeals in this case does not reflect the requisite deference and does not support the conclusion that the District Court abused its discretion.

IV

As an initial matter, we note that the District Judge committed no significant procedural error. He correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the §3553(a) factors, and thoroughly documented his reasoning. The Court of Appeals found that the District Judge erred in failing to give proper weight to the seriousness of the offense, as required by §3553(a)(2)(A), and failing to consider whether a sentence of probation would create unwarranted disparities, as required by §3553(a)(6). We disagree.

Section 3553(a)(2)(A) requires judges to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The Court of Appeals concluded that "the district court did not properly

---

[8] It is particularly revealing that when we adopted an abuse-of-discretion standard in *Koon*, we explicitly rejected the Government's argument that "*de novo* review of departure decisions is necessary 'to protect against unwarranted disparities arising from the differing sentencing approaches of individual district judges.'" 518 U. S., at 97 (quoting Brief for United States in O. T. 1995, No. 94–1664, p. 12). Even then we were satisfied that a more deferential abuse-of-discretion standard could successfully balance the need to "reduce unjustified disparities" across the Nation and "consider every convicted person as an individual." 518 U. S., at 113.

weigh the seriousness of Gall's offense" because it "ignored the serious health risks ecstasy poses." 446 F. 3d, at 890. Contrary to the Court of Appeals' conclusion, the District Judge plainly did consider the seriousness of the offense. See, *e.g.,* App. 99 ("The Court, however, is bound to impose a sentence that reflects the seriousness of joining a conspiracy to distribute MDMA or ecstasy"); *id.,* at 122.[9] It is true that the District Judge did not make specific reference to the (unquestionably significant) health risks posed by ecstasy, but the prosecutor did not raise ecstasy's effects at the sentencing hearing. Had the prosecutor raised the issue, specific discussion of the point might have been in order, but it was not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative.

The Government's legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law is at least to some extent offset by the fact that seven of the eight defendants in this case have been sentenced to significant prison terms. Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id.,* at 126.

---

[9] The District Judge also gave specific consideration to the fact—not directly taken into account by the Guidelines—that Gall netted $30,000 from his participation in the conspiracy. He noted, however:

"[T]his fact can be viewed from different perspectives. On the one hand, [Gall] should be punished for profiting from a criminal scheme. . . . On the other hand, [Gall], who is from a working-class family and has few financial resources, decided to turn his back on what, for him, was a highly profitable venture. . . . The Court can not consider, for the purposes of sentencing, one side of the financial aspect of the offense conduct without considering the other." App. 123–124, n. 3.

Section 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Court of Appeals stated that "the record does not show that the district court considered whether a sentence of probation would result in unwarranted disparities." 446 F. 3d, at 890. As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.

Moreover, as we understand the colloquy between the District Judge and the AUSA, it seems that the judge gave specific attention to the issue of disparity when he inquired about the sentences already imposed by a different judge on two of Gall's codefendants. The AUSA advised the District Judge that defendant Harbison had received a 30-month sentence and that Gooding had received 35 months. The following colloquy then occurred:

> "THE COURT: . . . You probably know more about this than anybody. How long did those two stay in the conspiracy, and did they voluntarily withdraw?
>
> "MR GRIESS: They did not.
>
> "THE COURT: They did not?
>
> "MR. GRIESS: They did not voluntarily withdraw. And they were in the conspiracy, I think, for a shorter period of time, but at the very end.
>
> "THE COURT: Okay. Thank you.
>
> "MR. GRIESS: A significant difference there, Your Honor, is that they were in the conspiracy after the guidelines changed and, therefore, were sentenced at

a much higher level because of that." App. 88.

A little later Mr. Griess stated: "The last thing I want to talk about goes to sentencing disparity. . . . Obviously, the Court is cognizant of that and wants to avoid any unwarranted sentencing disparities." *Id.*, at 89. He then discussed at some length the sentence of 36 months imposed on another codefendant, Jarod Yoder, whose participation in the conspiracy was roughly comparable to Gall's. Griess voluntarily acknowledged three differences between Yoder and Gall: Yoder was in the conspiracy at its end and therefore was sentenced under the more severe Guidelines, he had a more serious criminal history, and he did not withdraw from the conspiracy.

From these facts, it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated. The District Judge regarded Gall's voluntary withdrawal as a reasonable basis for giving him a less severe sentence than the three codefendants discussed with the AUSA, who neither withdrew from the conspiracy nor rehabilitated themselves as Gall had done. We also note that neither the Court of Appeals nor the Government has called our attention to a comparable defendant who received a more severe sentence.

Since the District Court committed no procedural error, the only question for the Court of Appeals was whether the sentence was reasonable—*i.e.*, whether the District Judge abused his discretion in determining that the §3553(a) factors supported a sentence of probation and justified a substantial deviation from the Guidelines range. As we shall now explain, the sentence was reasonable. The Court of Appeals' decision to the contrary was incorrect and failed to demonstrate the requisite deference to the District Judge's decision.

V

The Court of Appeals gave virtually no deference to the District Court's decision that the §3553(a) factors justified a significant variance in this case. Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled *de novo* review of the facts presented and determined that, in its view, the degree of variance was not warranted.

The Court of Appeals thought that the District Court "gave too much weight to Gall's withdrawal from the conspiracy because the court failed to acknowledge the significant benefit Gall received from being subject to the 1999 Guidelines."[10] 446 F. 3d, at 889. This criticism is flawed in that it ignores the critical relevance of Gall's voluntary withdrawal, a circumstance that distinguished his conduct not only from that of all his codefendants, but from the vast majority of defendants convicted of conspiracy in federal court. The District Court quite reasonably attached great weight to the fact that Gall voluntarily withdrew from the conspiracy after deciding, on his own initiative, to change his life. This lends strong support to the District Court's conclusion that Gall is not going to return to criminal behavior and is not a danger to society. See 18 U. S. C. §§3553(a)(2)(B), (C). Compared to a case where the offender's rehabilitation occurred after he was charged with a crime, the District Court here had greater justification for believing Gall's turnaround was genuine, as distinct from a transparent attempt to build a mitigation case.

The Court of Appeals thought the District Judge "gave

---

[10] The Court of Appeals explained that under the current Guidelines, which treat ecstasy more harshly, Gall's base offense level would have been 32, eight levels higher than the base offense level imposed under the 1999 Guidelines.

significant weight to an improper factor" when he compared Gall's sale of ecstasy when he was a 21-year-old adult to the "impetuous and ill-considered" actions of persons under the age of 18. 446 F. 3d, at 890. The appellate court correctly observed that the studies cited by the District Judge do not explain how Gall's "specific behavior in the instant case was impetuous or ill-considered." *Ibid.*

In that portion of his sentencing memorandum, however, the judge was discussing the "character of the defendant," not the nature of his offense. App. 122. He noted that Gall's criminal history included a ticket for underage drinking when he was 18 years old and possession of marijuana that was contemporaneous with his offense in this case. In summary, the District Judge observed that all of Gall's criminal history "including the present offense, occurred when he was twenty-one-years old or younger" and appeared "to stem from his addictions to drugs and alcohol." *Id.*, at 123. The District Judge appended a long footnote to his discussion of Gall's immaturity. The footnote includes an excerpt from our opinion in *Roper* v. *Simmons,* 543 U. S. 551, 569 (2005), which quotes a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "'often result in impetuous and ill-considered actions.'" The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote:

> "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. . . . [T]he recent [National Institute of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquir-

ing into the conduct of a defendant." App. 123, n. 2.

Given the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future. Indeed, his consideration of that factor finds support in our cases. See, *e.g., Johnson* v. *Texas*, 509 U. S. 350, 367 (1993) (holding that a jury was free to consider a 19-year-old defendant's youth when determining whether there was a probability that he would continue to commit violent acts in the future and stating that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'" (quoting *Eddings* v. *Oklahoma*, 455 U. S. 104, 115 (1982))).

Finally, the Court of Appeals thought that, even if Gall's rehabilitation was dramatic and permanent, a sentence of probation for participation as a middleman in a conspiracy distributing 10,000 pills of ecstasy "lies outside the range of choice dictated by the facts of the case." 446 F. 3d, at 890. If the Guidelines were still mandatory, and assuming the facts did not justify a Guidelines-based downward departure, this would provide a sufficient basis for setting aside Gall's sentence because the Guidelines state that probation alone is not an appropriate sentence for comparable offenses.[11] But the Guidelines are not mandatory, and thus the "range of choice dictated by the facts of the case" is significantly broadened. Moreover, the Guidelines are only one of the factors to consider when imposing

[11] Specifically, probation is not recommended under the Guidelines when the applicable Guidelines range is outside Zone A of the sentencing table as it is here. USSG §5B1.1.

sentence, and §3553(a)(3) directs the judge to consider sentences other than imprisonment.

We also note that the Government did not argue below, and has not argued here, that a sentence of probation could never be imposed for a crime identical to Gall's. Indeed, it acknowledged that probation could be permissible if the record contained different—but in our view, no more compelling—mitigating evidence. Tr. of Oral Arg. 37–38 (stating that probation could be an appropriate sentence, given the exact same offense, if "there are compelling family circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them").

The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative. This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts. See 18 U. S. C. §§3553(a)(2)(B), (C).

The Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the §3553(a) factors justified a sentence of probation; it believed that the circumstances presented here were insufficient to sustain such a marked deviation from the Guidelines range. But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the §3553(a) factors, on the whole, justified the sentence. Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 06–7949

BRIAN MICHAEL GALL, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2007]

JUSTICE SCALIA, concurring.

I join the opinion of the Court.

In *Rita* v. *United States*, 551 U. S. ___, ___ (2007), I wrote separately to state my view that any appellate review of sentences for substantive reasonableness will necessarily result in a sentencing scheme constitutionally indistinguishable from the mandatory Guidelines struck down in *United States* v. *Booker*, 543 U. S. 220 (2005). Whether a sentencing scheme uses mandatory Guidelines, a "proportionality test" for Guidelines variances, or a deferential abuse-of-discretion standard, there will be some sentences upheld only on the basis of additional judge-found facts.

Although I continue to believe that substantive-reasonableness review is inherently flawed, I give *stare decisis* effect to the statutory holding of *Rita*. The highly deferential standard adopted by the Court today will result in far fewer unconstitutional sentences than the proportionality standard employed by the Eighth Circuit. Moreover, as I noted in *Rita*, the Court has not foreclosed as-applied constitutional challenges to sentences. The door therefore remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury.

# SUPREME COURT OF THE UNITED STATES

No. 06–7949

BRIAN MICHAEL GALL, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2007]

JUSTICE SOUTER, concurring.

I join the Court's opinion here, as I do in today's companion case of *Kimbrough* v. *United States*, *post,* p. ___, which follow *United States* v. *Booker*, 543 U. S. 220 (2005), and *Rita* v. *United States*, 551 U. S. ___ (2007). My disagreements with holdings in those earlier cases are not the stuff of formally perpetual dissent, but I see their objectionable points hexing our judgments today, see *id.,* at ___ (SOUTER, J., dissenting), and *Booker*, *supra,* at 272 (STEVENS, J., dissenting in part). After *Booker*'s remedial holding, I continue to think that the best resolution of the tension between substantial consistency throughout the system and the right of jury trial would be a new Act of Congress: reestablishing a statutory system of mandatory sentencing guidelines (though not identical to the original in all points of detail), but providing for jury findings of all facts necessary to set the upper range of sentencing discretion. See *Rita, supra,* at ___ (slip op., at 9).

# SUPREME COURT OF THE UNITED STATES

No. 06–7949

BRIAN MICHAEL GALL, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2007]

JUSTICE THOMAS, dissenting.

Consistent with my dissenting opinion in *Kimbrough* v. *United States*, *post,* p. ___, I would affirm the judgment of the Court of Appeals because the District Court committed statutory error when it departed below the applicable Guidelines range.

# SUPREME COURT OF THE UNITED STATES

No. 06–7949

BRIAN MICHAEL GALL, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 10, 2007]

JUSTICE ALITO, dissenting.

The fundamental question in this case is whether, under the remedial decision in *United States* v. *Booker*, 543 U. S. 220 (2005), a district court must give the policy decisions that are embodied in the Sentencing Guidelines at least some significant weight in making a sentencing decision. I would answer that question in the affirmative and would therefore affirm the decision of the Court of Appeals.

I

In *Booker,* a bare majority held that the Sentencing Reform Act of 1984 (Sentencing Reform Act), as amended, 18 U. S. C. §3551 *et seq.*, 28 U. S. C. §991 *et seq.*, violated the Sixth Amendment insofar as it required district judges to follow the United States Sentencing Guidelines, but another bare majority held that this defect could be remedied by excising the two statutory provisions, 18 U. S. C. §§3553(b)(1) and 3742(e) (2000 ed. and Supp. IV), that made compliance with the Guidelines mandatory. As a result of these two holdings, the lower federal courts were instructed that the Guidelines must be regarded as "effectively advisory," *Booker*, 543 U. S., at 245, and that individual sentencing decisions are subject to appellate review for "'reasonableness.'" *Id.,* at 262. The *Booker* remedial opinion did not explain exactly what it meant by a system

of "advisory" guidelines or by "reasonableness" review, and the opinion is open to different interpretations.

It is possible to read the opinion to mean that district judges, after giving the Guidelines a polite nod, may then proceed essentially as if the Sentencing Reform Act had never been enacted. This is how two of the dissents interpreted the Court's opinion. JUSTICE STEVENS wrote that sentencing judges had "regain[ed] the unconstrained discretion Congress eliminated in 1984" when it enacted the Sentencing Reform Act. *Id.,* at 297. JUSTICE SCALIA stated that "logic compels the conclusion that the sentencing judge . . . has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range." *Id.*, at 305.

While this is a possible understanding of the remedial opinion, a better reading is that sentencing judges must still give the Guidelines' policy decisions some significant weight and that the courts of appeals must still police compliance. In a key passage, the remedial opinion stated:

> "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U. S. C. A. §§3553(a)(4), (5) (Supp. 2004). *But compare post, at 305 (SCALIA, J., dissenting in part) (claiming that the sentencing judge has the same discretion 'he possessed before the Act was passed').* The courts of appeals review sentencing decisions for unreasonableness. These features of the remaining system, while not the system Congress enacted, nonetheless *continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities* while maintaining flexibility sufficient to individualize sentences where necessary." *Id.*, at 264–265 (emphasis added).

The implication of this passage is that district courts are

still required to give some deference to the policy decisions embodied in the Guidelines and that appellate review must monitor compliance. District courts must not only "consult" the Guidelines, they must "take them into account." *Id.,* at 264. In addition, the passage distances the remedial majority from JUSTICE SCALIA's position that, under an advisory Guidelines scheme, a district judge would have "discretion to sentence anywhere within the ranges authorized by statute" so long as the judge "state[d] that 'this court does not believe that the punishment set forth in the Guidelines is appropriate for this sort of offense.'" *Id.,* at 305 (opinion dissenting in part).

Moreover, in the passage quoted above and at other points in the remedial opinion, the Court expressed confidence that appellate review for reasonableness would help to avoid "'excessive sentencing disparities'" and "would tend to iron out sentencing differences." *Id.,* at 263. Indeed, a major theme of the remedial opinion, as well as our decision last Term in *Rita* v. *United States*, 551 U. S. ___ (2007), was that the post-*Booker* sentencing regime would still promote the Sentencing Reform Act's goal of reducing sentencing disparities. See, *e.g.*, 551 U. S., at __ (slip op., at 8), __ (slip op., at 9), __ (slip op., at 15); *Booker*, *supra,* at 259–260, 263–264.

It is unrealistic to think this goal can be achieved over the long term if sentencing judges need only give lip service to the Guidelines. The other sentencing factors set out in §3553(a) are so broad that they impose few real restraints on sentencing judges. See *id.,* at 305 (SCALIA, J., dissenting in part). Thus, if judges are obligated to do no more than consult the Guidelines before deciding upon the sentence that is, in their independent judgment, sufficient to serve the other §3553(a) factors, federal sentencing will not "move . . . in Congress' preferred direction." *Id.,* at 264 (opinion of the Court). On the contrary, sentencing disparities will gradually increase. Appellate

decisions affirming sentences that diverge from the Guidelines (such as the Court's decision today) will be influential, and the sentencing habits developed during the pre-*Booker* era will fade.

Finally, in reading the *Booker* remedial opinion, we should not forget the decision's constitutional underpinnings. *Booker* and its antecedents are based on the Sixth Amendment right to trial by jury. The Court has held that (at least under a mandatory guidelines system) a defendant has the right to have a jury, not a judge, find facts that increase the defendant's authorized sentence. See *id.,* at 230–232; *Blakely* v. *Washington*, 542 U. S. 296, 303–304 (2004). It is telling that the rules set out in the Court's opinion in the present case have nothing to do with juries or factfinding and, indeed, that not one of the facts that bears on petitioner's sentence is disputed. What is at issue, instead, is the allocation of the authority to decide issues of substantive sentencing policy, an issue on which the Sixth Amendment says absolutely nothing. The yawning gap between the Sixth Amendment and the Court's opinion should be enough to show that the *Blakely-Booker* line of cases has gone astray.

In *Blakely*, the Court drew a distinction—between judicial factfinding under a guidelines system and judicial factfinding under a discretionary sentencing system, see 542 U. S., at 309–310—that, in my judgment, cannot be defended as a matter of principle. It would be a coherent principle to hold that any fact that increases a defendant's sentence beyond the minimum required by the jury's verdict of guilt must be found by a jury. Such a holding, however, would clash with accepted sentencing practice at the time of the adoption of the Sixth Amendment. By that time, many States had enacted criminal statutes that gave trial judges the discretion to select a sentence from within

a prescribed range,[1] and the First Congress enacted federal criminal statutes that were cast in this mold. See An Act for the Punishment of certain Crimes against the United States, 1 Stat. 112.[2]

---

[1] To take some examples, Connecticut, as of 1784, punished burglary and robbery without violence with imprisonment of up to 10 years "at the Discretion of the Superior Court before whom the Conviction is had." See Acts and Laws of the State of Connecticut 18 (1784). A 1749 Delaware law punished assault of a parent with imprisonment of up to 18 months. Laws of the State of Delaware 306 (1797). A 1793 Maryland law gave courts the ability to "in their discretion, adjudge" criminal defendants "to serve and labour for any time, in their discretion, not exceeding" specified terms of years. Digest of the Laws of Maryland 196 (T. Herty 1799). By 1785, Massachusetts allowed judges to sentence criminals convicted of a variety of offenses, including assault and manslaughter, "according to the aggravation of the offense," or "at the discretion of the Court." The Perpetual Laws, of the Commonwealth of Massachusetts, from the Establishment of its Constitution to the First Session of the General Court A. D. 1788 (1788), reprinted in The First Laws of The Commonwealth of Massachusetts, pp. 244–252 (J. Cushing comp. 1981). In 1791, New Hampshire passed a law punishing certain assaults with imprisonment of up to two years, and forgery with imprisonment of up to three years, at the court's discretion. See Laws of the State of New Hampshire (1792). New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and South Carolina likewise enacted criminal statutes providing for indeterminate sentences of imprisonment at the discretion of the court either before, or in the immediate wake of, the ratification of the Sixth Amendment. See, *e.g.,* Laws of the State of New Jersey 210–218 (1800) (detailing laws passed in 1796); 2 Laws of the State of New York 45–48, 211, 242–248, 390 (1789); Laws of the State of North Carolina 288, 389 (J. Iredell 1791); An Abridgment of the Laws of Pennsylvania, Penal Laws 1–47 (1801) (detailing laws passed 1790–1794); Public Laws of the State of Rhode Island and Providence Plantations 584–600 (1798); Public Laws of the State of South Carolina 55, 61, 257, 497 (J. Grimke 1790).

[2] We have often looked to laws passed by the First Congress to aide interpretation of the Bill of Rights, which that Congress proposed. See, *e.g., Harmelin* v. *Michigan*, 501 U. S. 957, 980 (1991) (opinion of SCALIA, J.) (noting, while interpreting the Eighth Amendment, that "[t]he actions of the First Congress . . . are of course persuasive evidence of what the Constitution means"); *Marsh* v. *Chambers*, 463 U. S. 783, 788–790 (1983) (looking to the actions of the First Congress in

Under a sentencing system of this type, trial judges inevitably make findings of fact (albeit informally) that increase sentences beyond the minimum required by the jury's verdict. For example, under a statute providing that the punishment for burglary is, say, imprisonment for up to *x* years, the sentencing court might increase the sentence that it would have otherwise imposed by some amount based on evidence introduced at trial that the defendant was armed or that, before committing the crime, the defendant had told a confederate that he would kill the occupants if they awakened during the burglary. The only difference between this sort of factfinding and the type that occurs under a guidelines system is that factfinding under a guidelines system is explicit and the effect of each critical finding is quantified. But in both instances, facts that cause a defendant to spend more time in prison are found by judges, not juries, and therefore no distinction can be drawn as a matter of Sixth Amendment principle.

The Court's acceptance of this distinction also produced strange collateral consequences. A sentencing system that gives trial judges the discretion to sentence within a specified range not only permits judicial factfinding that may increase a sentence, such a system also gives individual judges discretion to implement their own sentencing policies. This latter feature, whether wise or unwise, has nothing to do with the concerns of the Sixth Amendment, and a principal objective of the Sentencing Reform Act was to take this power out of the hands of individual district judges.

The *Booker* remedy, however, undid this congressional choice. In curing the Sentencing Reform Act's perceived

---

interpreting the First Amendment); *Carroll* v. *United States*, 267 U. S. 132, 150–152 (1925) (looking to the actions of the First Congress in interpreting the Fourth Amendment).

defect regarding judicial factfinding, *Booker* restored to the district courts at least a measure of the policymaking authority that the Sentencing Reform Act had taken away. (How much of this authority was given back is, of course, the issue here.)

I recognize that the Court is committed to the *Blakely-Booker* line of cases, but we are not required to continue along a path that will take us further and further off course. Because the *Booker* remedial opinion may be read to require sentencing judges to give weight to the Guidelines, I would adopt that interpretation and thus minimize the gap between what the Sixth Amendment requires and what our cases have held.

## II

### A

Read fairly, the opinion of the Court of Appeals holds that the District Court did not properly exercise its sentencing discretion because it did not give sufficient weight to the policy decisions reflected in the Guidelines. Petitioner was convicted of a serious crime, conspiracy to distribute "ecstasy." He distributed thousands of pills and made between $30,000 and $40,000 in profit. Although he eventually left the conspiracy, he did so because he was worried about apprehension. The Sentencing Guidelines called for a term of imprisonment of 30 to 37 months, but the District Court imposed a term of probation.

Compelled to interpret the *Booker* remedial opinion, the District Court, it appears, essentially chose the interpretation outlined in JUSTICE STEVENS' and JUSTICE SCALIA's dissents. The District Court considered the sentence called for by the Guidelines, but I see no evidence that the District Court deferred to the Guidelines to any significant degree. Rather, the court determined what it thought was appropriate under the circumstances and sentenced petitioner accordingly.

If the question before us was whether a reasonable jurist could conclude that a sentence of probation was sufficient in this case to serve the purposes of punishment set out in 18 U. S. C. §3553(a)(2), the District Court's decision could not be disturbed. But because I believe that sentencing judges must still give some significant weight to the Guidelines sentencing range, the Commission's policy statements, and the need to avoid unwarranted sentencing disparities, §3553(a)(3), (4), and (5) (2000 ed. and Supp. V), I agree with the Eighth Circuit that the District Court did not properly exercise its discretion.

Appellate review for abuse of discretion is not an empty formality. A decision calling for the exercise of judicial discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 416 (1975). Accord, *United States* v. *Taylor*, 487 U. S. 326, 336 (1988); *Franks* v. *Bowman Transp. Co.*, 424 U. S. 747, 783 (1976) (Powell, J., concurring in part and dissenting in part). And when a trial court is required by statute to take specified factors into account in making a discretionary decision, the trial court must be reversed if it "ignored or slighted a factor that Congress has deemed pertinent." *Taylor*, *supra*, at 337. See *Hensley* v. *Eckerhart*, 461 U. S. 424, 438–440 (1983) (finding an abuse of discretion where the District Court "did not properly consider" 1 of 12 factors Congress found relevant to the amount of attorney's fees when passing the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. §1988). See also *United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U. S. 483, 497–498 (2001) (A court exercising its discretion "cannot 'ignore the judgment of Congress, deliberately expressed in legislation.' *Virginian R. Co.* v. *Railway Employees*, 300 U. S. 515, 551 (1937)"); *American Paper Institute, Inc.* v. *American Elec. Power Service Corp.*, 461 U. S. 402, 413 (1983) ("To decide whether [Federal Energy Regulatory

Commission's] action was . . . an abuse of discretion, we must determine whether the agency adequately considered the factors relevant" under the statute (internal quotation marks omitted)); *Southern S. S. Co.* v. *NLRB*, 316 U. S. 31, 46, 47 (1942) (finding an abuse of discretion where the National Labor Relations Board sought to fulfill one congressional objective but "wholly ignore[d] other and equally important Congressional objectives").

Here, the District Court "slighted" the factors set out in 18 U. S. C. §§3553(a)(3), (4), and (5) (2000 ed. and Supp. V)—namely, the Guidelines sentencing range, the Commission's policy statements, and the need to avoid unwarranted sentencing disparities. Although the Guidelines called for a prison term of at least 30 months, the District Court did not require any imprisonment—not one day. The opinion of the Court makes much of the restrictions and burdens of probation, see *ante*, at 9–10, but in the real world there is a huge difference between imprisonment and probation. If the District Court had given any appreciable weight to the Guidelines, the District Court could not have sentenced petitioner to probation without very strong countervailing considerations.

The court listed five considerations as justification for a sentence of probation: (1) petitioner's "voluntary and explicit withdrawal from the conspiracy," (2) his "exemplary behavior while on bond," (3) "the support manifested by family and friends," (4) "the lack of criminal history, especially a complete lack of any violent criminal history," (5) and his age at the time of the offense, 21. App. 97.

Two of the considerations that the District Court cited—"the support manifested by family and friends" and his age, *ibid.*—amounted to a direct rejection of the Sentencing Commission's authority to decide the most basic issues of sentencing policy. In the Sentencing Reform Act, Congress required the Sentencing Commission to consider and decide whether certain specified factors—including "age,"

"education," "previous employment record," "physical condition," "family ties and responsibilities," and "community ties"—"have any relevance to the nature [and] extent . . . of an appropriate sentence." 28 U. S. C. §994(d). These factors come up with great frequency, and judges in the pre-Sentencing Reform Act era disagreed regarding their relevance. Indeed, some of these factors were viewed by some judges as reasons for increasing a sentence and by others as reasons for decreasing a sentence. For example, if a defendant had a job, a supportive family, and friends, those factors were sometimes viewed as justifying a harsher sentence on the ground that the defendant had squandered the opportunity to lead a law-abiding life. Alternatively, those same factors were sometimes viewed as justifications for a more lenient sentence on the ground that a defendant with a job and a network of support would be less likely to return to crime. If each judge is free to implement his or her personal views on such matters, sentencing disparities are inevitable.

In response to Congress' direction to establish uniform national sentencing policies regarding these common sentencing factors, the Sentencing Commission issued policy statements concluding that "age," "family ties," and "community ties" are relevant to sentencing only in unusual cases. See United States Sentencing Commission, Guidelines Manual §§5H1.1 (age), 5H1.6 (family and community ties) (Nov. 2006). The District Court in this case did not claim that there was anything particularly unusual about petitioner's family or community ties or his age, but the court cited these factors as justifications for a sentence of probation. Although the District Court was obligated to take into account the Commission's policy statements and the need to avoid sentencing disparities, the District Court rejected Commission policy statements that are critical to the effort to reduce such disparities.

The District Court relied on petitioner's lack of criminal

history, but criminal history (or the lack thereof) is a central factor in the calculation of the Guidelines range. Petitioner was given credit for his lack of criminal history in the calculation of his Guidelines sentence. Consequently, giving petitioner additional credit for this factor was nothing more than an expression of disagreement with the policy determination reflected in the Guidelines range.

The District Court mentioned petitioner's "exemplary behavior while on bond," App. 97, but this surely cannot be regarded as a weighty factor.

Finally, the District Court was plainly impressed by petitioner's "voluntary and explicit withdrawal from the conspiracy." *Ibid.* As the Government argues, the legitimate strength of this factor is diminished by petitioner's motivation in withdrawing. He did not leave the conspiracy for reasons of conscience, and he made no effort to stop the others in the ring. He withdrew because he had become afraid of apprehension. 446 F. 3d 884, 886 (CA8 2006). While the District Court was within its rights in regarding this factor and petitioner's "self-rehabilitat[ion]," App. 75, as positive considerations, they are not enough, in light of the Guidelines' call for a 30- to 37-month prison term, to warrant a sentence of probation.

B

In reaching the opposite conclusion, the Court attacks straw men. The Court unjustifiably faults the Eighth Circuit for using what it characterizes as a "rigid mathematical formula." *Ante*, at 8. The Eighth Circuit (following a Seventh Circuit opinion) stated that a trial judge's justifications for a sentence outside the Guidelines range must be "proportional to the extent of the difference between the advisory range and the sentence imposed." 446 F. 3d, at 889 (quoting *United States* v. *Claiborne*, 439 F. 3d 479, 481 (CA8 2006), in turn quoting *United States* v.

*Johnson*, 427 F. 3d 423, 426–427 (CA7 2005); internal quotation marks omitted). Taking this language literally as requiring a mathematical computation, the Court has an easy time showing that mathematical precision is not possible:

> "[T]he mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? . . . What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him?" *Ante*, at 10.

This criticism is quite unfair. It is apparent that the Seventh and Eighth Circuits did not mean to suggest that proportionality review could be reduced to a mathematical equation, and certainly the Eighth Circuit in this case did not assign numbers to the various justifications offered by the District Court. All that the Seventh and Eighth Circuits meant, I am convinced, is what this Court's opinion states, *i.e.*, that "the extent of the difference between a particular sentence and the recommended Guidelines range" is a relevant consideration in determining whether the District Court properly exercised its sentencing discretion. *Ante*, at 2.

This Court's opinion is also wrong in suggesting that the Eighth Circuit's approach was inconsistent with the abuse-of-discretion standard of appellate review. *Ante*, at 10. The Eighth Circuit stated unequivocally that it was conducting abuse-of-discretion review, 446 F. 3d, at 888–889; abuse-of-discretion review is not toothless; and it is entirely proper for a reviewing court to find an abuse of discretion when important factors—in this case, the Guidelines, policy statements, and the need to avoid sentencing disparities—are "slighted." *Taylor*, 487 U. S., at

337. The mere fact that the Eighth Circuit reversed is hardly proof that the Eighth Circuit did not apply the correct standard of review.

Because I believe that the Eighth Circuit correctly interpreted and applied the standards set out in the *Booker* remedial opinion, I must respectfully dissent.[3]

---

[3] While I believe that the Court's analysis of the sentence imposed in this case does not give sufficient weight to the Guidelines, it is noteworthy that the Court's opinion does not reject the proposition that the policy decisions embodied in the Guidelines are entitled to at least some weight. The Court's opinion in this case conspicuously refrains from directly addressing that question, and the opinion in *Kimbrough* v. *United States*, post, p. ___, is explicitly equivocal, stating that "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." *Post*, at 21 (slip op., at 21) (quoting *Rita* v. *United States*, 551 U. S. ___, __ (2007) (slip op., at 12)).